**WO**                                                                       JKM

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gennady Abramovich Ilyabaev, ) | No. CV 12-0404-PHX-GMS (ECV) |
| Petitioner, ) | ORDER |
| vs. ) | |
| Katrina S. Kane, et al., ) | |
| Respondents. ) | |

Before the Court is Petitioners' request for a preliminary stay of their removal.[1] Because the underlying Petition for Writ of Habeas Corpus is fully briefed and the parties have agreed to the Court's accelerated consideration of its merits, the Court will rule on the Petition. See F. R. CIV. P. 65(a)(2).

**I.     Factual Background**

Petitioners Gennady Abramovich Ilyabaev (Mr. Ilyabaev), his wife Tatiana Alekseevna Makarova, and their daughter Elena Gennadyevna Ilyabaev, are natives of Uzbekistan and citizens of Israel. On August 4, 1995, Jam Precision filed a Form ETA-750 Application for Alien Employment Certification (ETA-750) on behalf of Mr. Ilyabaev.[2]

---

[1] The Court previously granted a temporary stay of removal (Doc. 13), and an extension of that stay (Doc. 24).

[2] Because Tatiana Makarova and Elena Ilyabaev are derivative beneficiaries of Mr. Ilyabaev's immigration status, this Order focuses on his status and claims.

(Doc. 1, Ex. 1 at 3.)[3] The ETA-750 listed the relevant job as "Precision Lathe Operator," a position that required a minimum of three years of experience. (Id.) The ETA-750 also claimed that Mr. Ilyabaev had been employed as a lathe operator at Nir-Al Ltd. from December 1991 to May 1995. (Id.) On December 6, 1997, Jam Precision filed a Form I-140 Immigrant Petition for Alien Worker (I-140 Petition) seeking a "Skilled Worker" visa for Mr. Ilyabaev under 8 U.S.C. § 1153(b)(3)(A)(i). (Id.) On February 4, 1998, Citizenship and Immigration Services (CIS) approved the I-140 Petition. (Id.) On September 2, 1998, a U.S. Embassy investigator learned from Nir-Al Ltd. that Mr. Ilyabaev had been employed with them from December 1992 to July 1995, which was less than the three years of experience required by the ETA-750. (Id.) The I-140 Petition, however, was not immediately revoked by CIS and Mr. Ilyabaev was not informed of the discrepancy.

On June 14, 1999, Mr. Ilyabaev was admitted to the United States on a B-2 visa that authorized him to stay until December 13, 1999. Id. On January 7, 2000, Mr. Ilyabaev filed a Form I-485 Application to Adjust Status to Legal Permanent Resident (I-485 Application) under 8 U.S.C. § 1255(a).[4] (Id.) On November 4, 2003, CIS issued a Notice of Intent to Revoke the I-140 Petition. (Doc. 1, Ex. 3.) The Notice of Intent to Revoke warned that CIS intended to revoke the I-140 Petition because the beneficiary (Mr. Ilyabaev) did not have the three years of experience required by the ETA-750 and because the petitioner (Jam Precision) failed to demonstrate that it had the ability to pay the wage proffered in the ETA-750. (Id. at 2.) The Notice further provided that the "petitioner is afforded a period of thirty (30) days from the date of [the] notice to offer evidence in support of the petition and in opposition to the proposed revocation." (Id.) The Notice was mailed to Jam Precision but not to Mr.

---

[3] In their Petition, Petitioners refer to Exhibits "A" through "L," but the Exhibits themselves are not so labeled. The Court will therefore refer to the exhibit numbers as they appear on the electronic docket.

[4] The Attorney General may adjust the status of an alien to "that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).

Ilyabaev or his attorney of record. (Id.; Doc. 14 at 2.) Jam Precision did not respond to the Notice and on November 12, 2004, CIS issued a Notice of Revocation (Revocation) revoking[5] the I-140 because CIS had received no response to the Notice of Intent to Revoke. (Doc. 1, Ex. 4 at 2.) As with the Notice, the Revocation was mailed to Jam Precision, but not to Mr. Ilyabaev or his attorney of record. (Id. at 1-2.)

On the same date that it issued the Revocation, CIS issued a Notice of Intent to Deny Mr. Ilyabaev's I-485 Application on the ground that after the revocation of the I-140 Petition, he no longer had an immediately available visa and he was, therefore, ineligible for adjustment of his status under 8 C.F.R. § 245.2(a)(2)(i). (Doc. 1, Ex. 5.) The Notice of Intent to Deny further explained that under the American Competitiveness in the Twenty-First Century Act of 2000 (ACTFCA), an I-485 applicant whose Application had been pending for more than 180 days could port his I-140 Petition to a new employer without the need for a new I-140 Petition by submitting a letter from the new employer. (Id.) On December 10, 2004, Mr. Ilyabaev responded to the Notice of Intent to Deny by submitting a letter from his new employer, Kearny Electric, Inc., detailing Mr. Ilyabaev's terms of employment. On December 28, 2005, CIS denied Mr. Ilyabaev's I-485 Application on the ground that his employment with Kearny Electric was not similar to the Jam Precision job as required by the ACTFCA.[6] (Doc. 1, Ex. 7 at 2.) On January 26, 2006, Mr. Ilyabaev moved to reopen and reconsider, submitting evidence to support his claim that the two jobs were similar. (Doc. 1, Ex. 8.) On February 12, 2007, CIS denied the motion to reopen on the grounds that the I-140 Petition was not eligible for porting to a new employer because it had already been revoked and because Mr. Ilyabaev was unqualified when it was originally granted. (Doc. 1, Ex. 9 at 2.)

---

[5] CIS may revoke a previously approved visa petition "at any time" for "good and sufficient cause." 8 U.S.C. § 1155.

[6] The decision erroneously asserts that "[o]n November 12, 2004, you [referring to Mr. Ilyabaev] were sent a notice of revocation of that I-140 petition because it was found that you did not have the requisite three years experience as a precision lathe operator." (Doc. 1, Ex. 7 at 2.)

- 3 -

On July 25, 2007, Immigration and Customs Enforcement (ICE) issued a Notice to Appear (NTA), charging that Petitioners were removable under 8 U.S.C. § 1227(a)(1)(B) as admitted aliens who remained in the United States longer than permitted by their visas. (Doc. 1, Ex. 1 at 1.) Petitioners admitted the allegations made in the NTA and conceded that they were removable, but they applied for relief from removal in the form of adjustment of their status or voluntary departure. (Doc. 1, Ex. 1 at 2.) On July 28, 2009, the IJ, relying on an opinion of the United States Court of Appeals for the Ninth Circuit handed down three weeks earlier, Herrera v. U.S. Citizenship and Immigration Servs., 571 F.3d 881 (9th Cir. 2009), held that Petitioners were not eligible to adjust their status because CIS determined that the requisite I-140 Petition should not have been approved and it was, therefore, not portable to a new employer under the ACTFCA. (Id. at 7.) The IJ did, however, grant voluntary departure. (Id.) On June 16, 2011, the Board of Immigration Appeals (BIA) dismissed Petitioners' appeal. (Doc. 4, Ex. 16.) The BIA held that both the IJ and the BIA lacked jurisdiction to review Petitioners' claim that CIS wrongly revoked the I-140 Petition. (Id. at 3.)

In their Petition for Writ of Habeas Corpus, Petitioners do not challenge the decisions made by the IJ or the BIA. Instead, they claim that CIS violated their right to due process by failing to follow its own regulation—8 C.F.R. § 103.2(b)(16)(I)—requiring it to notify them of any adverse information and provide them with an opportunity to respond before it revoked the I-140 Petition and denied the I-485 Application. Mr. Ilyabaev asserts that if he had been provided proper notice, he would have presented evidence demonstrating that he had the requisite three years of experience as a precision lathe operator. Petitioners seek an order invalidating CIS's decisions to revoke the I-140 Petition and deny their I-485 Applications.

## II.   Subject Matter Jurisdiction

In their Response in Opposition to the Petition for Writ of Habeas Corpus and to the Request for Temporary Restraining Order (Doc. 10) and at oral argument, Respondents argued that the Court should deny the Petition because the Court lacks subject matter

- 4 -

jurisdiction to hear Petitioners' claims. At the outset, Respondents argue that Petitioners have failed to identify a valid statutory jurisdictional basis for this action. Specifically, Respondents argue that the Court lacks habeas corpus jurisdiction under 28 U.S.C. § 2241 or federal question jurisdiction under 28 U.S.C. § 1331. But their § 2241 and § 1331 arguments are merely bootstrapped to their arguments that the REAL ID Act of 2005 deprives the Court of habeas corpus jurisdiction and that Petitioners' lack of standing deprives the Court of federal question jurisdiction. The Court will consider each of Respondents' specific jurisdictional arguments in turn.

### A. Discretionary Decisions

At oral argument, Respondents asserted that Herrera held that the courts lack jurisdiction to review the decision to revoke an I-140 because it is a purely discretionary decision. In fact, Herrera held the exact opposite. In Herrera, an alien filed an action in a federal district court challenging CIS's revocation of a previously-approved I-140 Petition.[7] Herrera, 571 F.3d at 885. The district court granted summary judgment to the defendants and Herrera appealed. Id. The Ninth Circuit held, in part, that it "ha[d] jurisdiction to review a visa revocation decision under 8 U.S.C. § 1155, notwithstanding the jurisdiction-stripping provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996." Id. The explanation for that holding can be found in Ana Int'l Inc. v. Way, 393 F.3d 886 (9th Cir. 2004), upon which Herrera relied. In Ana Int'l Inc., CIS argued that 8 U.S.C. § 1252(a)(2)(B)(ii)[8] deprived the courts of jurisdiction to review the decision to revoke an

---

[7] As in this case, the revocation of the I-140 Petition made Herrera ineligible for adjustment of her status and inexorably lead to the denial of her I-485 Application. Herrera, 571 F.3d at 883.

[8] Section 1252(a)(2)(B)(ii) provides that:
(B) **Denials of Discretionary Relief** Notwithstanding any other provision of law, . . . no court shall have jurisdiction to review—
. . .
(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

1  I-140 Petition because 8 U.S.C. § 1155 committed the decision to the Attorney General's
2  discretion. The Ninth Circuit disagreed. It held that revocation of an I-140 Petition is not
3  purely within the discretion of the Attorney General because the "good and sufficient cause"
4  language in § 1155 "constitutes a legal standard the meaning of which [the courts] retain
5  jurisdiction to clarify." Id. at 893.

6  But even if the revocation decision were committed to the Attorney General's
7  unfettered discretion, § 1252(a)(2)(B)(ii) would not deprive the Court of jurisdiction because
8  Petitioners are not asking the Court to second guess CIS's decision to revoke the I-140
9  Petition. Instead, they ask only that they be granted an opportunity to be heard before CIS
10 makes it's decision. The question of whether CIS must give them that opportunity is a purely
11 legal question over which this Court retains jurisdiction.

12 **B.     The REAL ID Act**

13 Respondents argue that the Court lacks jurisdiction under 28 U.S.C. §§ 1331, 1651,
14 2201, and 2241 because the jurisdiction-limiting amendments to 8 U.S.C. § 1252 made by
15 the REAL ID Act provide that Petitioners' sole avenue of relief was an appeal from the BIA
16 to the United States Court of Appeals for the Ninth Circuit. Respondents' argument misses
17 the mark, however, because it mistakenly relies on the assumption that Petitioners are
18 challenging the BIA's removal decision.

19 Respondents argue that under 8 U.S.C. §§ 1252(a)(5) and (b)(9), Petitioners may only
20 "challenge their final order of removal, denial of adjustment of status, or revocation of the
21 I-140 . . . in the appropriate court of appeals after exhaustion of their administrative remedies
22 in removal proceedings." (Doc. 10 at 7.) The Court agrees that while a petition for review
23 from the BIA to the Ninth Circuit is the exclusive means to challenge a final order of
24 removal, neither of these provisions deprive the Court of jurisdiction to review Petitioners'
25 challenge to CIS's revocation of the I-140 Petition and denial of Petitioners' I-485
26 applications.

27 As amended by the REAL ID Act, 8 U.S.C. § 1252(a)(5) provides that
28 "[n]otwithstanding any other provision of law . . ., including section 2241 of Title 28, or any

other habeas corpus provision, . . . a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an *order of removal* entered or issued under any provision of the [Immigration and Naturalization Act]." 8 U.S.C. § 1252(a)(5) (emphasis added).  Thus, under § 1252(a)(5), a "district court plainly lack[s] habeas jurisdiction" to review removal orders. Iasu v. Smith, 511 F.3d 881, 888 (9th Cir. 2007).  But § 1252(a)(5) does not deprive the district courts of habeas corpus jurisdiction over immigration claims that do not seek review of a *removal order*.  The Ninth Circuit recently emphasized "that determining when the REAL ID Act preempts habeas jurisdiction requires a case-by-case inquiry turning on a practical analysis, and that there are many circumstances in which an alien subject to an order of a removal can properly challenge his immigration detention in a habeas petition without unduly implicating the order of removal." Vijendra Singh v. Holder, 638 F.3d 1196, 1211 (9th Cir. 2011).  For example, in Amarjeet Singh v. Gonzales, 499 F.3d 969 (9th Cir. 2007), the Ninth Circuit considered whether a district court retained habeas corpus jurisdiction to entertain an alien's claim that his attorney provided him with ineffective assistance of counsel by failing to timely file with the court of appeals a petition for review from final order of removal.  The Ninth Circuit noted that the injury challenged in the petition was "the deprivation of an opportunity for direct review of the order of removal in the court of appeals" and therefore the alien's "only remedy would be the restarting of the thirty-day period for the filing of a petition for review" with the court of appeals. Id. at 979.  Because "a successful habeas petition in [Singh's] case [would] lead to nothing more than 'a day in court' for Singh," his petition "[could] []not be construed as seeking judicial review of a final order of removal, notwithstanding his ultimate goal or desire to overturn that final order of removal." Id.  The Ninth Circuit therefore held that §§ 1252(a)(5) and (b)(9) did not deprive the district court of habeas corpus jurisdiction to review Singh's ineffective assistance of counsel claim. Id. at 980.

Like the alien in Amarjeet Singh, Petitioners are not challenging a final order of removal.  Instead, they are challenging the procedural propriety of CIS's revocation of the I-140 Petition.  That challenge could not have been raised in their removal proceedings.  The

BIA specifically held that both it and the IJ lacked jurisdiction to review Petitioners' claim that CIS wrongly revoked the I-140 Petition. (Doc. 4, Ex. 16 at 3); See also Smethurst v. Holder, 413 Fed. Appx. 970, 971 (9th Cir. 2011) (unpublished memorandum) (IJ's "do not have jurisdiction to reinstate a properly revoked visa petition under 8 U.S.C. § 1155"). The injury challenged in this action is CIS's failure to provide Mr. Ilyabaev with an opportunity to challenge the basis for the revocation of the I-140 Petition. Success on that claim will lead to nothing more than an opportunity for Mr. Ilyabaev to rebut CIS's evidence that he lacked sufficient experience to qualify for the initial position with Jam Precision. Because this action does not challenge a final order of removal, §§ 1252(a)(5) and (b)(9), as amended by the REAL ID Act, do not deprive the Court of habeas corpus jurisdiction.

Respondents also argue that under 28 U.S.C. § 1252(g), as amended by the REAL ID Act, the Court lacks jurisdiction to stay Petitioners' removal from the United States. Section 1252(g) deprives the courts of jurisdiction, including habeas corpus jurisdiction, to review "any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Supreme Court has held that § 1252(g) does not "cover[] the universe of deportation claims," rather it "applies to only three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 482 (1999) (emphasis in original). In the process of considering why Congress would deprive the courts of jurisdiction over these three discrete actions, the Court explained that "[s]ection 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." Id. at 485 n.9.

Petitioners are not challenging the Attorney General's discretionary decision to remove them. Rather they claim that it would be unlawful to remove them before they have had the opportunity to exercise their legal right to challenge CIS's basis for revoking the I-140 Petition. Because this is a legal claim, not a challenge to the Attorney General's exercise of prosecutorial discretion, § 1252(g) does not deprive the Court of jurisdiction.

1    Respondents also claim that § 1252(a)(2)(D) deprives the Court of jurisdiction, but
2 they do not explain why that is so.  Section 1252(a)(2)(D) merely provides that
3 notwithstanding other jurisdiction-limiting provisions in § 1252, the courts of appeals retain
4 jurisdiction to review questions of law and constitutional claims raised in a petition for review
5 from a final order of removal.  But as already explained, Petitioners are not challenging a final
6 order of removal and, therefore, § 1252(a)(2)(D) is inapplicable.

7    **C.    Exhaustion of Judicial Remedies**

8    Respondents assert that the Court lacks subject matter jurisdiction because Petitioners
9 have failed to exhaust their judicial remedies by appealing the BIA's removal decision to the
10 Ninth Circuit.  Respondents do not, however, provide any support for this jurisdictional
11 argument.  Instead, they maintain that Petitioners were required to exhaust their judicial
12 remedies as a prudential matter.[9]  This argument fails because, as previously noted, Petitioners
13 are not challenging their removal orders over which the Ninth Circuit would have had
14 jurisdiction.  The judicial review available to challenge CIS's revocation decision lies with
15 the district courts.  Herrera, 571 F.3d at 885.  The prudential requirement to exhaust judicial
16 remedies is therefore inapplicable.

17    **D.    Exhaustion of Administrative Remedies**

18    Respondents argued for the first time at oral argument that Petitioners we required to
19 exhaust their administrative remedies by appealing the revocation of the I-140 Petition to the
20 Administrative Appeals Office.  Their only specific support for that proposition was a citation
21 to 8 U.S.C. § 1252(d)(1).  That provision provides that "A court may review *a final order of*
22 *removal* only if—(1) the alien has exhausted all administrative remedies available to the alien
23 as of right."  8 U.S.C. § 1252(d)(1) (emphasis added).  Respondents' administrative
24 exhaustion argument fails for the same reason that their other jurisdictional arguments
25 fail—Petitioners are not challenging an order of removal.

---

[9] The prudential exhaustion doctrine is not jurisdictional—courts have discretion to waive prudential exhaustion. Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007).

At oral argument Respondents also argued that administrative exhaustion was required under the Code of Federal Regulations,[10] but they were unable to cite any specific regulation in support of their contention. The Court therefore deems the argument waived. But even if the regulations required Petitioners to appeal the revocation of the I-140 Petition, it is difficult to see how they could have done so. Petitioners were not served with either the Notice of Intent to Deny the I-140 Petition or the Notice of Revocation. Although the Notice of Intent to Deny Mr. Ilyabaev's I-485 Application informed him that the I-140 had been revoked, it did not explain why it had been revoked. It also suggested that he did not need to challenge the revocation because it could be ported to another job if he provided information that he had a job offer for a similar position. By the time Mr. Ilyabaev learned the reason for the revocation of the I-140 Petition and was finally informed by CIS that the revoked I-140 Petition could not be ported, the time for any appeal had long since passed. The Court will therefore not dismiss this action for failure to exhaust administrative remedies.

**III.    Merits**

Petitioners claim that CIS would not have revoked the I-140 Petition (and their I-485 would not have been denied) if Mr. Ilyabaev had been provided an opportunity to present additional evidence of his relevant work experience. And they argue that 8 C.F.R. § 103.2(b)(16)(i) required CIS to give Mr. Ilyabaev notice and an opportunity to be heard before the decision was made.

Respondents do not challenge Petitioners' claim that CIS would not have revoked the I-140 Petition if Mr. Ilyabaev had been provided an opportunity to present additional evidence of his relevant work experience.[11] Rather, they argue that Petitioners lack standing to raise

---

[10] They also argued, however, that as a beneficiary of the I-140 Petition, Mr. Ilyabaev would not have had standing to appeal its revocation

[11] At oral argument Respondents asserted that Petitioners presented the evidence of Mr. Ilyabaev's relevant work experience in his motion to reopen and that CIS considered that evidence in its decision denying the motion to reopen. The Court has reviewed both documents and can find no support for that claim. The motion to reopen was based solely

their claim because under the relevant regulations Mr. Ilyabaev, as a beneficiary, was not entitled to notice and an opportunity to be heard before CIS revoked the I-140 Petition.

At oral argument, Respondents asserted that Herrera supports their argument that an I-140 beneficiary is not entitled to notice of intent to revoke. Again, they are mistaken. In Herrera, the I-140 beneficiary—Herrera—challenged the sufficiency of the notice of intent to revoke that CIS provided to her. Herrera 571 F.3d at 888. In considering the sufficiency of the notice, the Ninth Circuit implicitly assumed that Herrera was entitled to adequate notice and an opportunity to be heard. The court rejected Herrera's claim only because it found that she was given sufficient notice and opportunity to be heard:

> The notice of intent to revoke was legally sufficient. It plainly advised Herrera [the beneficiary] that she was not, and had never been, "eligible for the classification sought.". . . The notice of intent to revoke also met the procedural requirements described in In re Estime, 19 I. & N. Dec. at 451. A petitioner generally "must be permitted to inspect the record of proceedings, must be advised of derogatory evidence of which he is unaware, and must be offered an opportunity to rebut such evidence and to present evidence in his behalf." Id. Nothing in the record suggests that those requirements were not met. The handwritten notes taken by the CSC officer at Herrera's 2001 interview and the officer's internal memorandum were not the sort of "derogatory evidence" contemplated by In re Estime. In any event, Herrera [the beneficiary] was not "unaware" of the content of her 2001 interview because she gave the interview. And it was the interview itself, not the internal summaries of it, that caused the agency to seek revocation.

Id. Herrera clearly does not stand for the proposition that an I-140 beneficiary is not entitled to pre-revocation notice and an opportunity to be heard.

But even if Herrera is not dispositive on the standing issue, the Court agrees with Petitioners that the regulations promulgated under the Immigration and Nationality Act support Petitioners' claim. Petitioners argue that Mr. Ilyabaev was entitled to pre-revocation notice and an opportunity to be heard under 8 C.F.R. § 103.2(b)(16)(i), which provides:

> (16) Inspection of evidence. An *applicant or petitioner* shall be permitted to inspect the record of proceeding which constitutes the basis for the decision,

---

on Mr. Ilyabaev's claim that his new position with Kearny Electric was similar to the Jam Precision position. (Doc. 1, Ex. 8.) Similarly, CIS's Decision on Motion to Reopen does not indicate that it ever received or considered Mr. Ilyabaev's additional evidence of his prior precision lathe experience. (Doc. 1, Ex. 9.)

1 except as provided in the following paragraphs.

2 (i) Derogatory information unknown to *petitioner or applicant*. If the decision will be adverse to the *applicant or petitioner* and is based on derogatory information considered by the Service and of which the *applicant or petitioner* is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered, except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section. Any explanation, rebuttal, or information presented by or in behalf of the *applicant or petitioner* shall be included in the record of proceeding.

7 8 C.F.R. § 103.2(b)(16)(i) (emphasis added). Respondents implicitly concede that the
8 information that Mr. Ilyabaev had less than three years of lathe experience with Nir-Al Ltd.
9 qualified as "derogatory information" with respect to the I-140 Petition. But they argue that
10 8 C.F.R. § 103.2(b)(16)(i) does not apply to Mr. Ilyabaev, because he was not an "applicant
11 or petitioner" under the I-140 Petition. They note that Jam Precision was the I-140 petitioner
12 and Mr. Ilyabaev was the beneficiary. And because the regulations specifically provide that
13 an "affected party" for purposes of an immigration appeal "does not include the beneficiary
14 of a visa petition," 8 C.F.R. § 103.3(a)(1)(iii)(B), Mr. Ilyabaev had no right to notice and an
15 opportunity to be heard before the I-140 Petition was denied.

16 Petitioners agree that Mr. Ilyabaev was the beneficiary under the I-140 Petition, but
17 they note that he was simultaneously an "applicant" for an I-485 adjustment of status. And
18 because denial of the I-140 Petition resulted in automatic I-485 Application ineligibility,
19 CIS's information that Mr. Ilyabaev lacked sufficient work experience qualified as
20 "derogatory information" that CIS intended to use to deny his I-485 Application. Mr.
21 Ilyabaev therefore claims that as an "applicant" for an I-485 adjustment of status, he was
22 entitled to notice and an opportunity to be heard before CIS considered his employment
23 experience.

24 In response to this argument, Respondents merely deny that the employment
25 information was derogatory with respect to the I-485 Application. But Respondents mere
26 denial does not make it so. There was a direct cause and effect between CIS's reliance on the
27 information it received about Mr. Ilyabaev's employment experience and the denial of his I-
28 485 Application. Without that information, Mr. Ilyabaev was deprived of any real opportunity

to challenge the denial of his I-485 Application because, ultimately, the sole reason for denial of the Application was the revocation of the I-140 Petition. Mr. Ilyabaev had an I-485 Application pending. 8 C.F.R. § 103.2(b)(16)(i) was therefore applicable to him as an I-485 applicant. When the asserted reason for denying his I-485 Application was the revocation of the I-140 Petition, for derogatory reasons of which Mr. Ilyabaev was unaware, the regulation requires that he be given notice and an opportunity to rebut that information. Cf. Herrera, 571 F.3d at 889 (CIS's notice of intent to revoke an I-140 petition was "legally sufficient" and "also met the procedural requirements" because it notified Herrera—the I-140 beneficiary and I-485 applicant—of the ground on which CIS intended to revoke and granted her an opportunity to rebut).

**IV.     Conclusion**

Petitioners do not ask the Court to decide the merits of the I-140 Petition or to overturn their orders of removal. They merely seek an opportunity to be heard before CIS revokes the I-140 Petition and denies their I-485 Applications. The Court will grant their Petition for Writ of Habeas Corpus and require that CIS give them that opportunity.

**IT IS ORDERED granting** the Petition for Writ of Habeas Corpus. Respondents may not remove Petitioners from the United States before they have been granted the process due to them under the regulations and CIS has made a fully informed decision on the I-140 Petition and the I-485 Applications.

DATED this 22nd day of March, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge